In re Frank J. CHAPMAN, Debtor.

Brenda K. CHAPMAN, Plaintiff,

v.

Frank J. CHAPMAN, Defendant.

Bankruptcy No. 94–3013.
Related No. 93–32799.

United States Bankruptcy Court,
N.D. Ohio,
Western Division.

June 23, 1995.

574

Gordon Barry, Toledo, OH, for Defendant.

Ronald Henderson, Toledo, OH, for Plaintiff.

### MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after Trial upon Plaintiff's Complaint to Determine the Dischargeability of Debt. At the Trial, the Parties were afforded the opportunity to present evidence and make arguments they wished the Court to consider. This Court has reviewed the arguments of counsel, exhibits, as well as the entire record in the case. Based upon that review, and for the following reasons, the Court finds that all joint debts of Plaintiff and Defendant listed or referenced by the Lucas County Common Pleas, Domestic Relations Division, Final Judgement Entry of Divorce dated August 5, 1993 are non-dischargeable.

### FACTS

Plaintiff and Defendant were married on April 5, 1984, and have three children who were born on May 5, 1983, April 12, 1984, and May 7, 1985. On August 5, 1993, a Final Judgment Entry of Divorce (hereafter the "Entry") was signed by the Lucas County Common Pleas, Domestic Relations Division, wherein the Plaintiff was awarded custody of the three minor children. Under that Entry, the Defendant agreed to pay the sum of Two Hundred Thirty-two and 90/100 Dollars ($232.90) per month in child support. The Entry also found that the Defendant owed Plaintiff One Thousand Five Hundred Ninety-eight and 31/100 Dollars ($1,598.31) in past due child support, but provided that Defendant would only pay this amount back at the rate of Five Dollars ($5.00) per week. Plaintiff's only other income was from the receipt of government benefits (ADC), in the amount of Four Hundred Thirty-eight Dollars ($438.00) per month.

The Defendant was not ordered to pay Plaintiff any periodic payment as alimony. However, the Entry does state that Defendant shall pay all debts of the marriage and hold Plaintiff harmless thereon. Further, regarding one debt in particular, the Entry states that payment shall be "as and for spousal support." This debt, to "Gold Dome," was for siding previously put on their residential property. The Entry also gives Plaintiff the residential property, and states that Plaintiff shall hold Defendant harmless upon the balance due on the outstanding mortgage, real estate taxes, maintenance, and insurance of the property.

The Entry also addresses the possibility that the parties could file bankruptcy. The pertinent provision states that, "The filing of bankruptcy shall not be undertaken if it affects Plaintiff's right of ownership in the [residential property]." At the trial, it became clear that the Defendant's discharge of the joint marital debts could enable creditors to obtain judgments against Plaintiff and possibly foreclose on Plaintiff's home, in which there is substantial equity. The fair market value of the house at the time of the Entry was approximately Twenty-five Thousand Dollars ($25,000.00).

In a separate paragraph, the Entry notes that, "Plaintiff and Defendant are each awarded, *as and for a division of property,*

all furniture, furnishings, personal property and appliances now in their possession, free and clear of any claim by the other party." (emphasis added). No other provision in the Entry is denominated "division of property."

At the trial, it was shown that at the time of the divorce Plaintiff was reading at a third grade level. Plaintiff has been taking classes, and has improved her skills to the fifth grade level at this time. Plaintiff was never employed outside the home for longer than a sixth month period during her marriage with Defendant. Further, Plaintiff was only able to obtain minimum wage jobs throughout her life. It is apparent that Plaintiff intended to be a home-maker, and thus did not seek skills to be employed outside the home. Thus, the Court finds her earning potential minimal for the foreseeable future.

Defendant, on the other hand, has considerable earning power. During their marriage, Defendant became the manager of an adult bookstore, and earned a comfortable living. Further, Defendant is presently employed in the field of construction, and has the capacity to do quite well in this area considering his health and experience in the workforce. The Court finds that his earning potential is great.

On September 29, 1993, Defendant filed for Chapter 7 bankruptcy relief, seeking to have the joint debts of the marriage discharged. These debts, other than the Gold Dome debt, are as follows according to the Plaintiff's Pre-trial Brief:

| | |
|---|---|
| Ameritrust | $2,407.63 |
| City Bank Mastercard | $2,577.34 |
| City Bank, South Dakota, VISA | $1,966.72 |
| City Bank, VISA | $1,583.96 |
| Consulting Orthopedics Services | $335.00 |
| Drs. Diethelm & Diethelm | $481.48 |
| First Chicago Bank Card | $1,951.30 |
| Montgomery Wards | $2,678.77 |

These debts total Thirteen Thousand Nine Hundred Eighty-two and 20/100 Dollars ($13,982.20). At the trial, Defendant conceded that the Gold Dome was not dischargeable.

### LAW

Section 523 of the Bankruptcy Code reads in pertinent part:

**11 U.S.C. § 523. Exceptions to discharge**

(a) A discharge under ... this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a government unit, or property settlement agreement, but not to the extent that—

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

### DISCUSSION

Determinations concerning the dischargeability of debts are core proceedings pursuant to 28 U.S.C. Section 157. Thus, this case is a core proceeding.

Under § 523(a)(5), a hold harmless obligation found in a divorce decree regarding joint marital debts, such as the one found in the case at bar, can be found to be non-dischargeable spousal support. *In re Calhoun*, 715 F.2d 1103 (6th Cir.1983). Plaintiff argues that all joint debts of the marriage should be found non-dischargeable support obligations in this case. Defendant argues that the intent of the parties as memorialized in the Entry was that the Defendant's assumption of the Gold Dome debt was to be the sole spousal support for Plaintiff. Defendant asserts that because the Entry states that the Defendant's assumption of the Gold Dome debt "shall be as and for spousal support," and that the provision wherein Defendant assumes the other debts of the marriage has no such language, that the intent of the parties to create a property settlement is indisputable. This Court disagrees.

The language of the parties' (or state court's) characterization of the loan assumption does not control. *Calhoun*, 715 F.2d at 1111. In *Calhoun*, the Court of

Appeals for the Sixth Circuit outlined a four part formula for determining whether payments by a debtor are in the nature of alimony or property settlement. This formula has been summarized as follows:

(a) whether the *intent* of the state court or the parties was to create a support obligation;

(b) whether the support provision has the actual *effect* of providing necessary support;

(c) whether the amount of support provision is so excessive as to be *unreasonable* under traditional concepts of support; and

(d) if the amount of support is unreasonable, how much of it should be characterized as non-dischargeable for purposes of federal bankruptcy law.

*In re Singer,* 787 F.2d 1033 (6th Cir.1986) (Guy, J., concurring, emphasis in original). The Bankruptcy Court's determination as to whether a loan assumption constitutes a non-dischargeable support obligation is a factual finding only reviewable under the clearly erroneous standard. *Calhoun,* 715 F.2d at 1110; *Singer,* 787 F.2d at 1035.

■ The dispositive issue in the case at bar is whether the parties intended the Defendant's assumption of the joint debts to be in the nature of support. This Court finds that the other prongs of the *Calhoun* test are clearly met. Plaintiff lacks sufficient income to enable her to pay these bills. The assumption of debts would clearly have the effect of providing support to the Plaintiff and minor children, in that the Defendant's discharge of the debts could result in the attachment of the residential property at which Plaintiff and the children reside. Further, the Court does not believe that Defendant's duty to assume these debts is unreasonable under traditional concepts of support considering the presence of the minor children in this case.

■ When determining whether the parties intended to create a support obligation the Bankruptcy Court may consider any relevant evidence including those factors utilized by state courts to make a factual determination of intent to create support. *Calhoun,* 715 F.2d at 1109. This Court has long con-

sidered such factors as the disparity of earning power, need for economic support and stability, presence of minor children, and marital fault in making this determination. *In re Conrad,* 33 B.R. 601 (Bankr.N.D.Ohio 1983); *In re Hiller,* 44 B.R. 764, 767 (Bankr. N.D.Ohio 1984). Indeed, such factors were delineated by the Court of Appeals in *Singer,* 787 F.2d at 1035, citing *In re Shaver,* 736 F.2d 1314 (9th Cir.1984).

■ Usually, the *Calhoun* inquiry is made by considering each debt which was to be assumed in the divorce entry individually. *Calhoun* at 1111. Such an approach is especially helpful when the contested obligations are secured by specific items of property, or were incurred for specifically delineated services or items of property. See *In re Shimp,* 59 B.R. 553 (Bankr.N.D.Ohio 1986), where this Court determined that repairs to the non-debtor spouse's residence and personal expenses for the benefit of the family were non-dischargeable, whereas debts for furniture currently used by the debtor were dischargeable. *Id.* at 555. However, sometimes it is necessary to determine whether in the scheme of obligations imposed by the decree, payment of those debts effectively operates as maintenance and support. *In re Hiller,* 44 B.R. 764, 767 (Bankr.N.D.Ohio 1984). See also *In re Holdenried,* 178 B.R. 782, 785 (Bankr.E.D.Mo.1995) (The Court applied a totality of the circumstances test to determine whether a debtor's assumption of the spouse's attorney's fees was in the nature of support).

■ *In re Brasher,* 20 B.R. 408 (Bankr. W.D.Tenn.1982) is a further example of this approach. In *Brasher,* the Court found that the debtor induced the non-debtor spouse into accepting debtor's assumption of joint debts in lieu of alimony, and thus all joint debts were non-dischargeable. Similarly, in *In re West,* 95 B.R. 395 (Bankr.E.D.Va.1989), the Court also looked to actual intent of divorce decree without consideration of the nature of the underlying debts. This approach appears the most equitable in the case at bar.

The hold harmless provision of the Entry in the case at bar provides that the filing of

bankruptcy shall not be undertaken if it affects the Plaintiff's right of ownership in her residence. At trial it was uncontested that the residential property of the Plaintiff and Defendant at the time of the divorce was a rather modest dwelling in a low property value area. However, the mortgage was nearly paid in full, and thus the property could easily become the subject of a foreclosure action by the parties' creditors. Indeed, the Plaintiff and Defendant had considered the possibility of filing joint bankruptcy, but were aware that a Chapter 7 liquidation could lead to the foreclosure by creditors on their house. Thus, the hold harmless clause was added to the Entry, and the parties agreed to seek bankruptcy advice subsequent to the divorce. After the divorce, the parties did consult local bankruptcy counsel on this issue, and were informed that if they were to file bankruptcy, they would indeed lose the house. For this reason, they declined to do so. Because the Court finds that the house is necessary as support for Plaintiff's minor children, this leads this Court toward the finding that the clause was added to provide such support.

Further, it is evident that Defendant's earning potential greatly outweighs that of Plaintiff, and that Plaintiff must look after the parties' children. Plaintiff is presently living on government assistance and will probably find no better alternative for some time due to her literacy shortcomings and extremely limited work experience. From these facts, this Court can only conclude that Defendant's assumption of the joint debts of the marriage was for the maintenance and support of Plaintiff and the children.

■ Defendant's assertion that the assumption of marital debts was not intended to provide support because spousal and child support are otherwise provided for in the Entry is without merit in this case. Numerous cases have found the assumption of joint debts to be support even where other child and spousal support is provided for in the agreement. In *In re Fitzgerald,* 9 F.3d 517 (6th Cir.1993), the Court found that debtor's duty to pay marital debts was in the nature of support, even though the non-debtor spouse received regular alimony payments,

and parties had no children. In *In re Conrad,* 33 B.R. 601 (Bankr.N.D.Ohio 1983), the debtor's obligation under a separation agreement to pay all debts of the marriage were held to imply that debtor's duty to pay the mortgage on residential property and automobile was not dischargeable, even though child support was provided for in the agreement. In *In re Hodges,* 139 B.R. 846 (Bankr. N.D.Ohio 1991), the divorce decree provided that debtor was to pay monthly alimony, but this Court found that the provision that debtor pay non-debtor spouse's attorney fees created non-dischargeable obligation. In *In re Portaro,* 108 B.R. 142 (Bankr.N.D.Ohio 1989), the debtor's obligation to pay attorney's fees, college expenses, mortgage, and remit portion of pension were found to be non-dischargeable support, even though child support and alimony were also awarded.

Further, agreements to assume mortgage obligations to provide a home for the non-debtor spouse and minor children have frequently been found to be support obligations. See *Conrad, Portaro,* supra. See also *Poolman v. Poolman,* 289 F.2d 332 (8th Cir. 1961); *Inskeep v. Draper,* 25 B.R. 518 (Bankr.S.D.Ohio 1982); *In re Friedrich,* 158 B.R. 675 (Bankr.N.D.Ohio 1993). In this case, the agreement to assume other debts so that the Plaintiff and children can remain in their family dwelling is tantamount to assuming a mortgage.

This Court's holding in this case is supported by the Court of Appeals analysis in *Singer.* The Court explained the situations created under § 523(a)(5) as follows:

> The three basic scenarios arising from the statute are as follows: 1, if payment, i.e. settlement agreement, is for alimony, maintenance, or support, the debt is non-dischargeable; 2, conversely, if the payment, or Settlement Agreement is strictly a property settlement, the debt is dischargeable; 3, where there is a property settlement in connection with alimony, maintenance, or support, the debt is non-dischargeable.

*Singer,* 787 F.2d at 1034. In the case at bar, the assumption of debts clearly falls into the third category. There is a connection between the division of debts and the support

of the Plaintiff and children as seen by the necessity of maintaining the children in their home. This connection is further evidenced by the provision in the Entry which forbids the Defendant from discharging debts through bankruptcy that could affect the Plaintiff's rights in her property.

A similar holding was made in *In re Portaro*, 108 B.R. 142 (Bankr.N.D.Ohio 1989), were this Court found that the state domestic relations court had taken into account the hold harmless clause relating to education loans when making other awards. *Id.* at 146. Thus, the debt was non-dischargeable. Though the Entry in this case was consensual, and thus the inquiry here is the intent of the parties and not that of the state court, this Court finds a similarity wherein the bargained for support was made with the intention that Defendant would not seek bankruptcy relief if doing so would affect Plaintiff's rights in her home. Thus, the debt is non-dischargeable support.

Finally, Defendant's argument that the portions of the Entry which provide for spousal and child support imply that other provisions cannot be intended as support also lacks merit under its own reasoning. The Entry also expressly denominates only one paragraph as a property settlement, and it is not the provision that deals with Defendant's assumption of joint debts. Thus, under Defendant's analysis, all un-denominated provisions of the Entry would be neither support nor property settlement. Such an outcome is clearly not intended under the Bankruptcy Code or the case law.

For all the foregoing reasons, this Court finds that all joint debts assumed under the Divorce Judgment Entry shall be found non-dischargeable. In reaching the conclusion found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this opinion.

Accordingly, it is

**ORDERED** all joint debts of the marriage shall be, and are hereby, non-dischargeable.